**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STOCKTRANS, INC.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs** | : | **NO. 07-1339** |
| | : | |
| **MILDRED ROSTOLDER, doing business as** | : | |
| **NORTH AMERICAN TRANSFER CO.,** | : | |
| **and MARVIN ROSTOLDER,** | : | |
| **Defendants.** | : | |

## <u>ORDER & MEMORANDUM</u>

## <u>ORDER</u>

      **AND NOW**, this 7th day of August, 2007, upon consideration of Defendants' Motion for Partial Judgment on the Pleadings (Document No. 11, filed May 31, 2007); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Partial Judgment on the Pleadings (Document No. 14, filed June 14, 2007); Plaintiff's Request for Oral Argument Regarding Defendant's Motion for Partial Judgment on the Pleadings and Plaintiff's Memorandum of Law in Opposition Thereto (Document No. 15, filed June 14, 2007); and Defendants' Reply Memorandum in Support of their Motion for Partial Judgment on the Pleadings (Document No. 16, filed June 15, 2007), for the reasons set forth in the attached Memorandum, **IT IS ORDERED**, as follows:

      1.      Defendants' Motion for Partial judgment on the Pleadings is **DENIED**; and

      2.      Plaintiff's Request for Oral Argument Regarding Defendant's Motion for Partial Judgment on the pleadings and Plaintiff's Memorandum of Law in Opposition Thereto is **DENIED AS MOOT**.

<u>MEMORANDUM</u>

I.    **BACKGROUND**

    A.    **Facts and Procedural History**

Plaintiff StockTrans, Inc. operates as a "stock transfer agent assisting companies throughout the United States with their stock transfer and share registrar requirements."  Am. Compl. ¶ 6.  Plaintiff alleges that on or about December 23, 2005, it entered into an agreement with another stock transfer agent, defendant Mildred Rostolder d/b/a North American Transfer Company ("NATC") for the purchase and assignment of all of the accounts of NATC.  The parties drafted two handwritten statements setting forth the agreement.  <u>See id.</u>, Ex. A.

The Amended Complaint describes the terms of the agreement as set forth in the handwritten statements as follows:

> The consideration set forth in the Contract for said assignment of Accounts included Plaintiff StockTrans' agreement to make additional payments to Mildred based upon net revenues from the assigned Accounts.
>
> For the first five (5) years of the Contract, Mildred was to receive from Plaintiff StockTrans an agreed percentage of 'net revenues' from assigned Accounts and new stock transfer accounts brought to StockTrans by Mildred.  The Contract defined 'net revenues' as gross revenues from such Accounts minus postage and freight for mailing, but not postage and freight for routine transfers.  Thereafter, 40% of 'net revenue' was to be retained by StockTrans for expenses and overhead.  Of the remaining 60% of 'net revenue':
>> A.    Mildred was to receive 50% for the first five years;
>> B.    Mildred was to receive 30% for year six;
>> C.    Mildred was to receive 25% for years seven and eight;
>> D.    Mildred was to receive 20% for years nine and ten.
>
> In addition, the Contract provided that Mildred was to receive $150.00 per month for gasoline and telephone costs.

Am. Compl. ¶¶ 11-12.

This agreement was further memorialized by a photograph of Mildred Rostolder shaking

2

hands with Jonathan Miller in StockTrans' office.  Id., Ex. B.  Additionally, plaintiff alleges that "[i]n furtherance of the planned transfer of the NATC accounts, and in partial performance under the handwritten contract, Mildred communicated with Miller in March 2006, to effectuate the transfer of one of NATC's Accounts, Bio-Imaging Technologies, Inc., to StockTrans."  Pl.'s Resp. at 2 (citing Amended Compl., Ex. C).

On or before July 6, 2005, Mildred Rostolder sold all of the accounts of NATC to a third party, Continental Stock Transfer & Trust Company.  It is that sale that gives rise to this lawsuit.

Plaintiff's original Complaint was filed in state court and removed to this Court on April 4, 2007.  On April 11, 2007, defendants filed a partial Motion to Dismiss.  Plaintiff filed an Amended Complaint on April 26, 2007, and defendant's Motion to Dismiss was denied as moot by Order dated May 11, 2007.

In the Amended Complaint, plaintiff seeks damages for (1) breach of contract, (2) fraudulent misrepresentation, (3) negligent misrepresentation, and (4) promissory estoppel.  With the Amended Complaint, plaintiff has submitted two writings that plaintiff alleges constitute the agreement between plaintiff and defendants: (1) a handwritten statement of the agreement recorded by defendant Marvin Rostolder (who was allegedly acting as an agent for Mildred Rostolder) and signed by Jonathan Miller, president of plaintiff StockTrans, and (2) a handwritten statement of the agreement recorded by Jonathan Miller and signed by Marvin Rostolder.  Am. Compl., Ex. A.

The primary difference between the Amended Complaint and the Complaint is that in the Complaint, plaintiff alleged that the December 24, 2005 agreement was memorialized not just in the handwritten statements, but also in a more lengthy "unexecuted agreement entitled

3

'Consulting Agreement,' ('Agreement 2') prepared at StockTrans' expense in reliance upon Mildred's agreement set forth in [the handwritten statements] and submitted by StockTrans from StockTrans' offices in Ardmore, Montgomery County, Pennsylvania, to Mildred and Marvin on or around January 31, 2006 . . . ."  Compl. ¶ 9.  The Amended Complaint makes no mention of the unexecuted Consulting Agreement.

**B.    Motion to Dismiss Complaint and Motion for Partial Judgment on the Pleadings**

In the first Motion to Dismiss, defendants argued that because, under Pennsylvania law, the Consulting Agreement had an execution clause, the fact that the agreement was not in fact executed was fatal to plaintiff's breach of contract claim and therefore the breach of contract claim (Count I) should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  See Franklin Interiors v. Wall of Fame Mgmt. Co., Inc., 511 A.2d 761 (Pa. 1986) (holding that when a contract contains a condition precedent, until the condition is satisfied, there is no valid contract).  Additionally, defendants argued that damages under the remaining counts should be limited to reliance damages because "in the absence of a valid breach of contract claim, [plaintiff's] claim for other than reliance damages must be [dis]missed."  Initial Mot. to Dismiss at 6.

On May 31, 2007, after plaintiff filed the Amended Complaint, defendants filed a Motion for Partial Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) in which defendants repeat these arguments.  Defendants argue that although the Amended Complaint omits mention of the Consulting Agreement and alleges that the two handwritten writings constitute the total agreement between the parties, plaintiff's prior pleadings constitute a judicial

4

admission against interest.  See Berckeley Investment Group, Ltd v. Colkitt, 455 F.3d 195, 211

n.20 (3d Cir. 2006).  Accordingly, defendants contend that plaintiff cannot avoid the breach of

contract claim's fatal defect–namely that no valid contract existed because the condition

precedent, namely the execution of the contract, was not completed.  On this basis defendants ask

the Court to enter judgment in their favor on plaintiff's breach of contract claim (Count I) and

limit damages for all claims to reliance damages.

Plaintiff argues in response that the handwritten statements constitute a binding contract

notwithstanding the drafting of the more formal Consulting Agreement.  It is plaintiff's position

that "while the Handwritten Contract was clearly binding upon the parties, the intent was for the

[Consulting Agreement], once executed, to put more 'meat on the bones' of the deal.'"  Resp. at

6.[1]

## II.    STANDARD OF REVIEW

A motion for judgment on the pleadings, made pursuant to Federal Rule of Civil

Procedure 12(c) is treated under the same standard as a motion to dismiss under Federal Rule of

Civil Procedure 12(b)(6).  See Shelly v. Johns-Manville Corp., 798 F.2d 93, 97, n.4 (3d Cir.

1986); Regalbuto v. City of Philadelphia, 937 F. Supp. 374, 376 (E.D. Pa. 1995).  A motion for

judgment on the pleadings will only be granted where the moving party has established that no

material issue of fact remains to be resolved, and that the movant is entitled to judgment as a

matter of law.  See Institute for Scientific Info., Inc. v. Gordon and Breach, Science Publishers,

Inc., 931 F.2d 1002, 1005 (3d Cir. 1991).  In determining whether a material issue of fact exists,

---

[1]Plaintiff also requests oral argument regarding defendants' motion for partial judgment
on the pleadings and plaintiff's opposition thereto pursuant to Local Rule of Civil Procedure
7.1(f).

the court must view the facts and inferences to be drawn from the pleadings in the light most

favorable to the non-moving party.  See <u>Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.</u>, 11

F.3d 399, 406 (3d Cir. 1993).

## III.    DISCUSSION

Under Pennsylvania law, "where the facts are in dispute, the question of whether a

contract was formed is for the jury to decide." <u>Ingrassia Construction Co., Inc. v. Walsh</u>, 486

A.2d 478, 482 (1984).  However, the question of "whether an undisputed set of facts establishes

a contract is one of law."  <u>Buff v. Fetterolf</u>, 215 A.2d 327, 330 (1965).

The undisputed facts in the pleadings are that (a) the parties signed an informal,

handwriten agreement; (b) following the signing of the informal agreement, plaintiff drafted a

more formal agreement, the Consulting Agreement; and (c) the Consulting Agreement was never

executed.

In reviewing the handwritten agreement, the Court concludes that, as a matter of law, if

the parties did intend to be bound, the handwritten documents create an enforceable contract.

> To form an enforceable contract, there must be an offer, acceptance and consideration.
> <u>Jenkins v. County of Schuylkil</u>, 658 A.2d 380, 383 (Pa. Super. Ct. 1995).  The offer and
> acceptance must include the essential terms that both parties intend to be binding.  <u>In re
> Estate of Hall</u>, 731 A.2d 617, 627 (Pa. Super. Ct. 1999).  The essential terms must be
> definite enough to provide a basis for enforcing the agreement.  <u>Biddle v. Johnsonbaugh</u>,
> 664 A.2d 159, 163.

<u>Hudyka v. Sunoco, Inc.</u>, 474 F. Supp. 2d 712, 716 (E.D. Pa. 2007); <u>see also</u> <u>Rome v. Glanton</u>,

958 F. Supp. 1026, (E.D. Pa. 1997) ("A court cannot enforce a contract unless it can determine

what it is . . . . Vagueness of expression, indefiniteness and uncertainty as to any of the essential

terms of an agreement, have often been held to prevent the creation of any enforceable

contract.").  The Court concludes that the handwritten documents, standing alone, demonstrate an offer, acceptance and consideration, and include sufficiently definite essential terms.

What is disputed, however is whether, in light of the drafting of the unexecuted Consulting Agreement, the parties intended the informal agreement to be binding.  If not binding, it is clear that, as a matter of law, the unexecuted Consulting Agreement standing alone does not constitute an enforceable contract.  See Franklin Interiors, 511 A.2d at 762 ("Until accepted by the Appellee in the mode and manner expressly provided by the terms of the offer, this document remains an unaccepted offer and cannot, in itself, be considered a binding contract.  This is hornbook law.); Infocomp, Inc. v. Electra Prods., 109 F.3d 902, 905-06 (3d Cir. 1997) (same).

Plaintiff argues that the handwritten agreement constitutes a binding contract, regardless of the subsequent drafting of the more formal Consulting Agreement.  Specifically plaintiff argues that:

> The parties had agreed to a core set of terms in the Handwritten contract and, after the signing of the Handwritten Contract, both parties took actions consistent with the belief that a binding agreement existed between them.  The fact that the parties decided to prepare a subsequent document that included the same basic terms but 'fleshed out' certain aspects of the transaction does not vitiate the initial Handwritten Contract between them.

Pl.'s Resp. at 3 n.5.  Under Pennsylvania law, if the parties agree upon the essential terms and agree for them to be binding, "a contract is formed even though they intend to adopt a formal document with additional terms at a later date."  Courier Times Inc. v. United Feature Syndicate, Inc., 445 A.2d 1288, 1295 (Pa. Super. Ct. 1982).

Defendants argue that the drafting of the Consulting Agreement demonstrated that the

handwritten contract was an informal agreement with terms left open to future negotiation, and

therefore was not intended to be binding.  It is well established in Pennsylvania that:

> A stipulation to reduce a valid contract to some other form does not affect its validity, although it is in contemplation of the parties that a more formal contract shall be executed, but it is essential to the enforcement of such an informal contract that the minds of the parties should meet upon all the terms as well as the subject-matter of the contract; and *if anything is left open for future consideration, the informal paper cannot form the basis of a binding contract.*

Onyx Oils & Resins, Inc. v. Moss, 80 A.2d 815, 817 (Pa. 1951) (emphasis added); see also GMH

Assocs., Inc. v. Prudential Realty Group, 752 A.2d 889, 900.[2]  It is defendants' position that the

Consulting Agreement itself demonstrates that the parties left terms of the agreement open for

future consideration because it differed considerably from the informal agreement.  See Def.

Reply at 2 n.1 ("But there can be no dispute that Exhibit B did more than simply flesh out the

terms of the handwritten agreements—it set forth entirely new terms, including an up front

payment of $60,000 and a non-compete agreement, among others.").

Although defendants are correct that, if the parties intended to leave terms of the

agreement open to consideration, the handwritten agreement may not be binding, such a

determination is not properly considered in a Motion for Judgment on the Pleadings.  In a similar

case, the Pennsylvania Supreme Court, explained as follows:

> This Court has long recognized the principle that documents, having the surface appearance of contracts may be in fact evidence of mere negotiating by parties with a view toward executing a binding contract in the future.  Should this be the case, of

---

[2]Plaintiffs seek to distinguish GHM Associates on the ground that it involved an oral agreement, rather than a written one.  However, as the language in Onyx Oils & Resins makes clear, the principle issue in this line of cases–that if any essential terms of an informal agreement are left open to future negotiation, the informal agreement is not enforceable–is not so limited. See id. 80 A.2d at 817 ("if anything is left open for future consideration, the *informal paper* cannot form the basis of a binding contract") (emphasis added).

course, such documents cannot form the basis for recovery.  <u>See, e.g.</u>, <u>Essner v. Shoemaker</u>, 143 A.2d 364 (1958); <u>Onyx Oils & Resins, Inc. v. Moss</u>, 80 A.2d 815 (1951); <u>Reich v. Vegex</u>, 51 F.Supp. 99 (E.D. Pa. 1942).  However, in each of these cited cases it was only *after trial* that such a conclusion was reached.

<u>Goldman v. McShain</u>, 247 A.2d 455, 458 (Pa. 1968).

As demonstrated by the foregoing discussion, whether the handwritten agreement was intended to bind the parties, or whether it was "evidence of mere negotiating" turns upon disputed questions of fact.  Because defendants have not established that, on the basis of the pleadings, no material issue of fact remains to be resolved, defendants' Motion for Judgment on the Pleadings is denied.  The question of whether a binding contract was formed by the handwritten agreement is properly within the purview of the jury.  <u>Ingrassia Construction Co., Inc.</u>, 486 A.2d at 482.

IV.   **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Partial Judgment on the Pleadings is denied.  Because the Court denies defendants' Motion for Partial Judgment on the Pleadings, plaintiff's request for oral argument on the Motion is denied as moot.

**BY THE COURT:**

**/s/ Honorable Jan E. DuBois**
**JAN E. DUBOIS, J.**

9