IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STOCKTRANS, INC.,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| vs. | : | **NO. 07-1339** |
| | : | |
| **MILDRED ROSTOLDER, doing business as** | : | |
| **NORTH AMERICAN TRANSFER CO.,** | : | |
| and **MARVIN ROSTOLDER,** | : | |
| Defendants. | : | |

## ORDER & MEMORANDUM

### O R D E R

AND NOW, this 3rd day of September, 2008, upon consideration of Defendants' Motion for Summary Judgment (Document No. 27, filed May 1, 2008); Defendants' Memorandum of Law in Support of its Motion for Summary Judgment (Document No. 28, filed May 1, 2008); Plaintiff's Reply in Opposition to Defendants' Motion for Summary Judgment (Document No. 29, filed May 14, 2008); and Plaintiff's Request for Oral Argument Regarding Defendants' Motion for Summary Judgment and Plaintiff's Reply and Memorandum of Law in Opposition Thereto (Document No. 31, filed May 14, 2008), for the reasons set forth in the attached Memorandum, **IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1. Defendants' Motion for Summary Judgment is **DENIED** with respect to plaintiff's breach of contract claim against defendant Mildred Rostolder in Count I and plaintiff's promissory estoppel claim against defendant Mildred Rostolder in Count IV of the Amended Complaint;

2.  Defendants' Motion for Summary Judgment is **GRANTED** with respect to plaintiff's fraudulent misrepresentation claim against defendants Mildred and Marvin Rostolder in Count II and plaintiff's negligent misrepresentation claim against defendants Mildred and Marvin Rostolder in Count III of the Amended Complaint.

**IT IS FURTHER ORDERED** that Plaintiff's Request for Oral Argument Regarding Defendants' Motion for Summary Judgment is **DENIED AS MOOT**.

## MEMORANDUM

**I.   INTRODUCTION**

This case arises out of an agreement between plaintiff StockTrans, Inc. ("StockTrans") and Mildred Rostolder d/b/a North American Transfer Company ("NATC") for the purchase and assignment NATC's accounts.  Plaintiff alleges that the agreement constituted a binding contract, which defendants breached by selling the NATC accounts to a third party, Continental Stock Transfer & Trust Company ("Continental").  In the Amended Complaint, plaintiff asserts claims for breach of contract (Count I), fraudulent misrepresentation (Count II), negligent misrepresentation (Count III), and promissory estoppel (Count IV).

Presently before the Court is defendants' motion for summary judgment as to all counts of the Amended Complaint.  For the reasons set forth below, defendants' motion is granted in part and denied in part.  The Court denies defendants' motion with respect to plaintiff's breach of contract and promissory estoppel claims, and grants the motion with respect to plaintiff's fraudulent misrepresentation and negligent misrepresentation claims.

## II.   BACKGROUND

### A.   Facts

Plaintiff StockTrans operates as a stock transfer agent assisting companies throughout the United States with their stock transfer and share registrar requirements. (Am. Compl. ¶ 6.) On or about December 24, 2005, Jonathan Miller, President of StockTrans, entered into an agreement with defendant Marvin Rostolder, the husband and alleged agent of defendant Mildred Rostolder, for the purchase and assignment of all of the accounts of NATC, another stock transfer agent. (Miller Aff. ¶¶ 9-12.) The parties drafted two handwritten statements setting forth the agreement and each party signed the other party's copy. (Ex. A to Am. Compl.; Miller Dep. 9/20/07, Ex. 3 to Defs.' Mot. at 22-24; Miller Aff. ¶ 11.) The agreement provided for payment to defendant Mildred Rostolder of a defined share of new revenues from the assigned accounts and $150 per month for gasoline and telephone costs. (Ex. A to Am. Compl.; Miller Dep. 22-24.)

After Mr. Miller and defendant Marvin Rostolder signed the agreement, Mr. Miller's wife took a series of photographs of Mr. Miller and defendant Mildred Rostolder, including a photograph of Mr. Miller and defendant Mildred Rostolder shaking hands. (Ex. G to Defs.' Mot; Miller Aff. ¶ 13.) Plaintiff asserts that the photograph was taken to portray Mr. Miller and defendant Mildred Rostolder "shaking hands on the deal" to send to clients of NATC during the transfer of accounts from NATC to StockTrans. (Miller Aff. ¶ 13.)

Subsequent to the meeting of December 24, 2005, plaintiff's counsel drafted a document titled "Consulting Agreement," which set forth the terms of the transaction between the parties in greater detail. (Id. ¶¶ 14-15.) That agreement was never executed.

On or before July 6, 2006, defendant Mildred Rostolder sold all of the NATC accounts to a third party, Continental. (Mildred Rostolder E-mail of 7/6/08, Ex. H to Defs.' Mot.) It is that sale that gives rise to this lawsuit.

### B.     Procedural History

Plaintiff's action was filed in state court and removed to this Court on April 4, 2007. On April 11, 2007, defendants filed a partial Motion to Dismiss. Plaintiff filed an Amended Complaint on April 26, 2007, and defendants' Motion to Dismiss was denied as moot by Order dated May 11, 2007.

On May 31, 2007, after plaintiff filed the Amended Complaint, defendants filed a Motion for Partial Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). The Court denied that motion by Order and Memorandum dated August 7, 2007.

On May 1, 2008, defendants filed the instant motion for summary judgment as to all counts of the Amended Complaint.

## III.    LEGAL STANDARD

A court should grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is material when it "might affect the outcome of the suit under the governing law." Id. In considering a motion for summary judgment, the "facts must be viewed

4

in the light most favorable to the party opposing summary judgment." Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990).  The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations, or suspicions" to support its claim.  Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).

## IV. DISCUSSION

### A. Plaintiff's Contract Claims

#### 1. Breach of Contract – Count I

In Count I, plaintiff asserts a breach of contract claim against defendant Mildred Rostoldor.  Under Pennsylvania law, "where the facts are in dispute, the question of whether a contract was formed is for the jury to decide." Ingrassia Constr. Co., Inc. v. Walsh, 486 A.2d 478, 482 (Pa. Super. 1984).  However, "[t]he question of whether an undisputed set of facts establishes a contract is a matter of law." Mountain Props., Inc. v. Tyler Hill Realty Corp., 767 A.2d 1096, 1101 (Pa. Super. 2001).

In its Order and Memorandum dated August 7, 2007, the Court held "that, as a matter of law, if the parties did intend to be bound, the handwritten documents create an enforceable contract." StockTrans, Inc. v. Rostolder, 2007 WL 2317403, *3 (E.D. Pa. Aug. 7, 2007).  The parties dispute whether they intended to be bound.  However, it is not the role of the Court to decide that question on a motion for summary judgment.  Plaintiff has presented sufficient evidence in support of its position to raise a genuine issue of material fact as to whether the parties intended the written agreement of December 24, 2005 to be an enforceable contract.  This evidence includes the deposition testimony and affidavit of Jonathan Miller and the testimony of other StockTrans employees who believed – based on the agreement of December 24, 2005 – that a contract had been formed for the purchase and assignment of the NATC accounts.

Defendant argues that notwithstanding this evidence, "plaintiff's breach of contract claim fails as a matter of law because plaintiff has admitted that the parties still had open terms to agree upon and therefore did not have a binding contract." (Defs.' Mot. 5.)  Specifically, defendant points to provisions of the unexecuted consulting agreement and discussions about a down payment as evidence of issues left open at the December 24, 2005 meeting.  (Def.'s Mot. 6.)  In response, plaintiff contends that no unsettled issues remained and that the parties intended the agreement signed on December 24, 2005, to serve as a binding, complete agreement.  (Pl's Resp. 6-13.)  With respect to the issue of a down payment, plaintiff argues that the inclusion of such a provision was not essential to the agreement reached on December 24, 2005, and that even if it was essential, the parties reached agreement on an up-front payment of $60,000, thereby completing the contract before the alleged breach took place.

The Court stated in its Order and Memorandum of August 7, 2007, that "[a]lthough defendants are correct that, if the parties intended to leave terms of the agreement open to consideration, the handwritten agreement may not be binding, such a determination is not properly considered in a Motion for Judgment on the Pleadings." StockTrans, Inc., 2007 WL 2317403, at *5.  The Court reaches the same conclusion with respect to the instant motion for summary judgment.

Plaintiff has presented genuine issues of material fact as to whether (1) the parties intended the agreement of December 24, 2005 to be a complete and enforceable agreement; and (2) whether, if the agreement of December 24, 2005 contained an open term regarding a down payment, the parties reached agreement on that issue prior to the alleged breach.  Accordingly, the Court rejects defendants' argument that summary judgment should be granted on the ground that the parties left contract terms open for consideration.

Defendants' final argument is that even if defendant Marvin Rostolder and Mr. Miller signed a final, complete agreement on December 24, 2005, that agreement was not binding on defendant Mildred Rostolder because defendant Marvin Rostolder lacked authority to form a contract for the assignment of the NATC accounts. In response, plaintiff argues that defendant Marvin Rostolder had apparent authority to bind defendant Mildred Rostolder.

"It is well settled that an agent has the power to make contracts which will bind the principal if the agent has actual or apparent authority. . . . Apparent authority exists where the principal, by words or conduct, leads people with whom the alleged agent deals to believe that the principal has granted the agent the authority he purports to exercise." Philadelphia v. One Reading Ctr. Assocs., 143 F. Supp. 2d 508, 517 (E.D. Pa. 2001) (citations and quotation marks omitted); see also Bolus v. United Penn Bank, 525 A.2d 1215, 1221 (Pa. Super. 1987) (describing apparent authority as "authority that the principal has by words or conduct held the alleged agent out as having" (citation omitted)). "Whether an agency relationship exists is a question of fact for the jury." Bolus, 525 A.2d at 1221 (citing Levy v. First Pa. Bank N.A., 487 A.2d 857 (Pa. Super. 1985); Breslin v. Ridarelli, 454 A.2d 80 (Pa. Super. 1982)).

Mr. Miller was asked at his deposition "what led [him] to believe that [Marvin Rostolder] had the authority to actually bind Mildred to the deal as opposed to negotiate?" (Miller Dep. 21.) Mr. Miller responded "[b]ecause [Mildred Rostolder] told me." (Id.) Mr. Miller further stated in his affidavit that "[t]hroughout my meeting with Marvin on December 24, 2005, I was of the understanding and belief that Marvin had complete authority to make a deal for the sale of NATC's accounts." (Miller Aff. ¶ 12.) Mr. Miller cited specific conversations with defendant Mildred Rostolder that led him to believe Marvin Rostolder had authority to complete the deal.

(Id. ¶¶ 4, 10.) Based on this evidence, the Court concludes that plaintiff has presented a genuine issue of material fact as to whether defendant Marvin Rostolder had apparent authority to bind defendant Mildred Rostolder.

For all of the foregoing reasons, the Court denies defendants' motion for summary judgment as to plaintiff's breach of contract claim in Count I.

### 2. Promissory Estoppel – Count IV

In Count IV of the Amended Complaint, plaintiff alleges that even if no contract was formed, defendant Mildred Rostolder may be liable under a theory of promissory estoppel. Under Pennsylvania law, a plaintiff may prevail on a promissory estoppel claim where "(1) the promisor makes a promise that he reasonably expects to induce action or forbearance by the promisee, (2) the promise does induce action or forbearance by the promisee, (3) and injustice can only be avoided by enforcing the promise." Carlson v. Arnot-Ogden Memorial Hosp., 918 F.2d 411, 416 (3d Cir. 1990); see also Restatement (Second) of Contracts § 90 (setting forth elements of promissory estoppel claim).

Defendants argue that plaintiff's promissory estoppel claim fails because "[a] broad and vague implied promise is insufficient to satisfy the first element." (Defs.' Mot. 26) (citing C & K Petroleum Prods., Inc. v. Equibank, 839 F.2d 188, 192 (3d Cir. 1988)). It is defendants' position that the only promise in this case was "a vague and implied promise by Ms. Rostolder to negotiate in good faith . . . ." (Id.) In response, plaintiff contends that the promises on which it relied were detailed and specific. The Court agrees with plaintiff on this issue.

In analyzing plaintiff's contract claim, the Court held in its Order and Memorandum of August 7, 2007, that "the handwritten documents, standing alone . . . include sufficiently definite

essential terms" to form the terms of a contract. StockTrans, Inc., 2007 WL 2317403, at *3. The Court reaches the same conclusion with respect to plaintiff's promissory estoppel claim. Defendant Mildred Rostolder allegedly promised to assign the NATC accounts to plaintiff in exchange for payment of a defined share of new revenues from the assigned accounts and $150 per month for gasoline and telephone costs. This promise was sufficiently definite for defendant to have reasonably expected that it would induce reliance. Accordingly, the Court concludes that plaintiff has satisfied the first element of its promissory estoppel claim.

Defendant does not contest the second and third elements of plaintiff's promissory estoppel claim. Having reviewed the summary judgment record, the Court concludes that plaintiff has presented genuine issues of material fact as to whether defendant's promise "induce[d] action or forbearance by" plaintiff and whether "injustice can only be avoided by enforcing the promise." Thus, the Court denies defendants' motion for summary judgment as to plaintiff's promissory estoppel claim in Count IV.

### B.    Plaintiff's Tort Claims are Barred by the Gist of the Action Doctrine

In Count II of the Amended Complaint, plaintiff alleges that defendants Mildred and Marvin Rostolder fraudulently misrepresented their intent to enter a contract with plaintiff for the transfer of the NATC accounts. In Count III of the Amended Complaint, plaintiff alleges that defendants Mildred and Marvin Rostolder negligently misrepresented the reasons for their delay in closing the transaction with StockTrans by offering misleading explanations to conceal their negotiations with Continental.

Defendants argue, inter alia, that they are entitled to summary judgment on these claims because they are barred by the "gist of the action doctrine." The Court agrees with defendants on

9

this issue.[1]

Pennsylvania's gist of the action doctrine "bars claims for allegedly tortious conduct where the gist of the conduct sounds in contract rather than tort." Hospicomm v. Fleet Bank, N.A., 338 F. Supp. 2d 578, 582 (E.D. Pa. 2004) (quotation omitted).  The gist of the action doctrine "bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." Hart v. Arnold, 884 A.2d 316, 340 (Pa. Super. 2005) (quoting eToll v. Elias/Savion Advertising, Inc., 811 A.2d 10, 19 (Pa. Super. 2002)).  The purpose of the doctrine is to "preclud[e] plaintiffs from re-casting ordinary breach of contract claims into tort claims." eToll, 811 A.2d at 14.

Although a breach of contract can give rise to an actionable tort, "to be construed as in tort . . . the wrong ascribed to defendant must be the gist of the action, the contract being collateral." Bash v. Bell Tel. Co., 601 A.2d 825, 829 (Pa. Super. 1992).  "In other words, a claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.'" Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001) (quoting Bash, 601 A.2d at 830).

Plaintiff's fraudulent misrepresentation claim is closely intertwined with defendants' promise to perform under the contract and, as such, is barred under the gist of the action doctrine.

---

[1] Because the Court concludes that plaintiff's tort claims are barred under the gist of the action doctrine, it does not reach defendants' other arguments with respect to plaintiff's fraudulent misrepresentation and negligent misrepresentation claims in Counts II and III.

Plaintiff essentially alleges that defendants committed fraud by inducing plaintiff into a contract that defendants did not intend to honor.  The alleged fraud consisted of the false promise that NATC would assign its accounts to StockTrans.  This promise was incorporated into the agreement between the parties.  Thus, the fraud is properly considered as fraud relating to the performance of the contract.  See Galdieri v. Monsanto Co., 245 F. Supp. 2d 636, 651 (E.D. Pa. 2002) (holding that a "breach of contract claim cannot be 'bootstrapped' into a fraud claim merely by . . . alleging the contracting parties never intended to perform").  For that reason, the Court grants defendants' motion for summary judgment as to plaintiff's fraudulent misrepresentation claim in Count II.[2]

The Court reaches the same result with respect to plaintiff's negligent misrepresentation claim.  Plaintiff's negligent misrepresentation claim relies on statements by defendants Mildred and Marvin Rostolder in the months after the agreement of December 24, 2005 was signed.  It is plaintiff's position that defendants' provided misleading explanations as to why the closing on the agreement with StockTrans had stalled when, in fact, defendants were negotiating with Continental during the period of delay.

Plaintiff's negligent misrepresentation claim is closely intertwined with its breach of contract claim, as the alleged misrepresentations were intended to facilitate defendant

---

[2] Plaintiff argues that its fraudulent misrepresentation claim should survive summary judgment because it is asserted in light of defendants' denial that a contract existed.  In a recent decision in this District, the district court persuasively addressed this very argument and concluded that where, as here, "[t]he 'fraud' facts are not 'analytically separable from allegations of breaches in the performance of the contract,'" the fraud claims should be dismissed even where a defendant denies the existence of a contract.  See WP 851 Assocs., L.P. v. Wachovia Bank, N.A., 2008 WL 114992, *5 (E.D. Pa. Jan. 10, 2008) (quoting Interwave Tech., Inc. v. Rockwell Automation, Inc., 2005 WL 3605272, *14 (E.D. Pa. Dec. 30, 2005)).

Rostolder's breach of the agreement.  Cf. eToll, Inc., 811 A.2d at 20 (fraud claims barred by gist of the action doctrine where defendant allegedly "concealed . . . schemes" in order to continue breaching contract).  As such, this claim is also barred under the gist of the action doctrine. Bash, 601 A.2d at 829 (tort claims barred by gist of the action doctrine unless collateral to contract claims).

Likewise, plaintiff's negligent misrepresentation claim is barred by the gist of the action doctrine because any duty that defendants owed to plaintiff arose from the contract.  "It is axiomatic that a plaintiff must establish he or she was owed a duty of care by the defendant . . . in order to successfully prove negligence." Reardon v. Allegheny College, 926 A.2d 477, 486-87 (Pa. Super. 2007).  However, "when the alleged duties breached were grounded in the contract itself," the gist of action doctrine acts to bar the plaintiff's claims.  Id. at 486.  Thus, to prevail on its negligent misrepresentation claim, plaintiff must establish the existence of a duty arising out of a social policy independent of the contract.  Plaintiff argues that defendants had a duty to truthfully disclose their intentions because "the parties were sharing confidential business information and working toward common objectives." (Pl.'s Resp. 22.)  This argument fails, however, because to the extent the parties were sharing information, they were doing so to implement the agreement of December 24, 2005.

It is clear from plaintiff's allegations and the summary judgment record that any duty the parties owed one another at the time of the alleged misrepresentations arose from the contract. Accordingly, plaintiff's negligent misrepresentation claim is barred by the gist of the action doctrine.  Thus, the Court grants defendants' motion for summary judgment as to plaintiff's negligent misrepresentation claim in Count III.

V.      **CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part defendants' motion for summary judgment. The Court denies the motion with respect to plaintiff's breach of contract and promissory estoppel claims in Counts I and IV of the Amended Complaint and grants the motion with respect to plaintiff's fraudulent and negligent misrepresentation claims asserted in Counts II and III of the Amended Complaint. Remaining for adjudication are plaintiff's breach of contract and promissory estoppel claims.

                        **BY THE COURT:**


                        **/s/ Honorable Jan E. DuBois**
                        **JAN E. DUBOIS, J.**